NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
ST. CROIX DIVISION

| | |
|---|---|
| LAURA M. DAUS,<br><br>       Plaintiff,<br><br>v.<br><br>WALTER H. GARDINER, M.D. and<br>HEALTHQUEST LLC d/b/a CARIBBEAN<br>KIDNEY CENTER,<br><br>       Defendants. | Civ. No. 11-67<br><br>OPINION |

THOMPSON, U.S.D.J.[1]

INTRODUCTION

This matter is before the Court upon the Motion to Dismiss of Defendants Walter H. Gardiner and Healthquest LLC d/b/a Caribbean Kidney Center (collectively, "Defendants"). (Doc. No. 7). Plaintiff Laura M. Daus ("Plaintiff") opposes. (Doc. No. 9). The Court has decided the Motion based on the written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, Defendant's Motion will be granted in part and denied in part.

BACKGROUND

Plaintiff's pertinent factual allegations are as follows. Plaintiff is a resident of Wisconsin who was hired in May 2009 as a dialysis nurse by Defendants, who operate a dialysis clinic on St. Croix in the U.S. Virgin Islands. After she moved to St. Croix and started working

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

for Defendants, Plaintiff would regularly work 50-55 hours per week with no overtime pay. In September 2009, in recognition of the long hours Plaintiff worked, Defendants gave her the title of Nurse Manager, increased her pay, and promised her a new contract; however, they never actually offered her a new contract. At one point Defendants also promised Plaintiff that she would be given compensation time for hours she worked beyond 40 hours a week instead of overtime payments, but they never allowed her to take off time from work to use this compensation time. Defendants also promised to provide Plaintiff with health insurance, but they let that coverage lapse on several occasions.

During the course of her time working for Defendants, Plaintiff discovered that Defendants were violating certain Medicare policies. When Defendants learned that Plaintiff had found out about these violations and was discussing the possibility of reporting them, Defendants began to harass Plaintiff by, among other things, making false accusations against her and refusing to speak to her at times. Plaintiff became physically ill because of this harassment.

On May 16, 2011, Defendants fired Plaintiff and failed to pay her for the work she had done through that pay period. The next day, Plaintiff was at the office to clean out her desk, and while there she requested information on how she could continue her health insurance under COBRA. Defendants told her that they would give her a COBRA letter; however, a few days later, Defendants told her that they had changed their minds and would not give her a COBRA letter. Because she had lost her job and her health insurance, Plaintiff was forced to leave St. Croix and return to Wisconsin.

LEGAL STANDARD

When considering a Rule 12(b)(6) motion, a district court must conduct a three-part analysis: "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept all of the plaintiff's well-pleaded factual allegations as true and construe the complaint in the light most favorable to the plaintiff, though the court should disregard legally conclusory allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show the plaintiff has a 'plausible claim for relief.'" *Id*. at 211. It is not enough for a pleading to offer "only 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" to survive a motion to dismiss; the plaintiff's allegations, taken together, must support a plausible claim under each cause of action. *Id*. at 210.

DISCUSSION

**I.      Fair Labor Standards Act**

In Count 1 Plaintiff alleges that she is entitled to unpaid overtime wages under the Fair Labor Standards Act ("FLSA"). In order to state a claim for unpaid overtime wages under the FLSA, "a plaintiff must show that '(1) he was an employee who was eligible for overtime (i.e., not exempt from the Act's overtime pay requirements); (2) and that he actually worked overtime hours for which he was not compensated.'" *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 507 (E.D.N.Y. 2011) (quoting *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009). While an employer bears the burden of proving that an employee falls within an exemption of the overtime requirement, the employee seeking unpaid overtime must plead that she is entitled to overtime, which includes pleading that she is

non-exempt.  *See id; Bachayeva v. Aermicare Cert. Special Servs., Inc.*, 2013 WL 1171741, *4 (E.D.N.Y. March 20, 2013).  Plaintiff has made no allegations concerning whether she was an exempt or a non-exempt employee, such as whether she was paid by salary or by an hourly rate.  *See Balgowan v. State of New Jersey*, 115 F.3d 214, 216 n.1 (3d Cir. 1997) (noting that "[a]n exempt professional under the salary-basis test is an employee who is, in effect, an executive who is salaried and does not work on an hourly basis.")  Accordingly, the Court will dismiss Plaintiff's FLSA overtime claim without prejudice and grant Plaintiff thirty days to file another amended complaint with allegations sufficient to support this claim.  If Plaintiff fails to file an amended complaint after thirty days, this claim will be dismissed.

## II.   COBRA

In Count 2 Plaintiff alleges that she never received a "COBRA letter" after she was fired, and she claims that by failing to provide her with such, "Defendants have violated the COBRA law."  (Doc. No. 1, Compl., at ¶¶ 42, 52).  The Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") "requires the employer of an employee under a 'Group Health Plan' covered by ERISA to notify the administrator of a qualifying event described in paragraph (1), (2), (4), or (6) of section 1163 of the same title within thirty (30) days of the date of the qualifying event.  29 U.S.C. § 1166(a)(2)."  *Rodriguez v. Oriental Fin. Grp. Inc.*, 802 F. Supp. 2d 350, 354 (D.P.R. 2011).  Additionally, 28 U.S.C. § 1161(b) exempts employers with fewer than 20 employees from COBRA's requirements.  *See Alisz v. Benefit Trust Life Ins. Co.*, 874 F. Supp. 224, 228–29 (N.D. Ind. 1994).  Here, Plaintiff has not alleged that Defendants' Group Health Plan was covered by ERISA, that Defendants either were the administrator of the Group Health Plan or that they did not notify the administrator of the Group Health Plan of Plaintiff's termination, or that Defendants had more than 20 employees.  While Plaintiff argues that this last

requirement is an affirmative defense that Plaintiff is not required to anticipate in its pleadings, the Court disagrees.  Just as Plaintiff is required to plead that she is nonexempt from the FLSA in order to sufficiently state a cause of action under that statute, here, too, Plaintiff is required to plead that Defendants are subject to COBRA's statutory scheme.  Accordingly, the Court will dismiss Plaintiff's COBRA claim without prejudice and grant Plaintiff leave to file an amended complaint on this claim subject to the same conditions as the FLSA claim.

### III.     False Claims Act Retaliation and Violations of the Virgin Islands Whistleblower Protection Act

In Count 3 Plaintiff alleges that Defendants retaliated against her in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), and the Virgin Islands Whistleblower Protect Act ("WPA"), 10 V.I.C. § 122.  "A plaintiff asserting a cause of action under § 3730(h) must show (1) he engaged in 'protected conduct,' (i.e., acts done in furtherance of an action under § 3730) and (2) that he was discriminated against because of his 'protected conduct.'"  *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001) (citing *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.D.C. 1998)).  The Third Circuit has further explained that, in order to prove that an employee was retaliated against because of his protected conduct, he must show that his employer was aware of his protected conduct. *Hutchins*, 253 F.3d at 188.  The standard for this knowledge requirement is that the employee "put his employer on notice of the 'distinct possibility' of False Claims Act litigation."  *Id*. (quoting *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.D.C. 1998)).  Here, Plaintiff has simply alleged that she became aware of "Medicare infractions," and that Defendants retaliated against her when they learned that she was "discussing notifying Medicare" of these infractions.  (Doc. No. 1, Compl., at ¶¶ 26, 34).  Plaintiff offers no allegations as to how she made Defendants aware that she was engaged in conduct protected under 31 U.S.C. § 3730, or that FCA litigation

was within the realm of possibility; she simply asserts that Defendants learned that she was discussing notifying Medicare of violations of their policies.  These conclusory allegations are insufficient to establish that Plaintiff put Defendants on notice of the "distinct possibility of False Claims Act litigation."  Accordingly, Plaintiff has failed to properly allege a claim for retaliation under the FCA.  The Court will dismiss this claim without prejudice and grant Plaintiff leave to file an amended complaint on this claim subject to the same conditions as the FLSA and COBRA claims.

The Virgin Islands WPA provides that "[a]n employer shall not discharge, threaten, or otherwise discriminate against an employee" when the employee "reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule" of the Virgin Islands or the United States.  10 V.I.C. § 122.  The elements of a WPA retaliation claim are similar to the elements of a FCA retaliation claim: "a whistleblower must show: (1) he engaged in conduct protected under the WPA; (2) his employer took adverse action against him; and (3) there was a causal connection between the protected conduct and the adverse action."  *Hodge v. Superior Ct. of the Virgin Islands*, 2009 WL 2996507, at *5 (D.V.I. Sept. 11, 2009), *aff'd*, 404 Fed. App'x 641 (3d. Cir. 2010); *see also*, *Johnson v. Gov't of the Virgin Islands*, 35 V.I. 27, 31 (Terr. Ct. 1996).  Defendants argue that Plaintiff did not bring her WPA claim within 90 days as required by 10 V.I.C. § 123; however, Plaintiff alleges that she was fired when Defendants found out she was discussing reporting Medicare violations on May 16, 2011.  Plaintiff filed her suit on July 7, 2011.  (Doc. No. 1, Compl.).  Accordingly, Plaintiff has sufficiently stated the elements of a WPA claim, and she has met the 90 day deadline at least with regard to her firing.  Defendants' motion will be denied as to Plaintiff's WPA retaliation claim.

## IV. Wrongful Discharge Act

In Count 4 Plaintiff alleges that she was wrongfully terminated in violation of the Virgin Islands Wrongful Discharge Act ("WDA"), 24 V.I.C. § 76(c). The WDA specifies that no employee can be discharged for any reason other than those listed in 24 V.I.C. § 76(a). Defendant moves to dismiss this claim on the grounds that Plaintiff was a supervisory employee, and that the WDA does not apply to her under the Third Circuit's ruling in *St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands,* 357 F.3d 297, 302 (3d Cir. 2004), which held that the WDA is preempted by the National Labor Relations Act with regard to supervisory employees. However, Plaintiff has not alleged that she was a supervisory employee; instead, she has alleged that Defendants gave her the title "Nurse Manager" but did not follow through with all of their promises regarding this new position. (Doc. No. 1, Compl., at ¶¶ 11–12). Thus, it is plausible that Plaintiff was given the title Nurse Manager but did not actually function as a supervisor, in which case she would still be protected by the WDA. Under the facts Plaintiff has alleged, the question of whether Plaintiff was a supervisor or not is a factual question that should not be decided on a motion to dismiss. Accordingly, the Court will deny Defendants' motion as to Plaintiff's WDA claim.

## V. Contract Claims

In Counts 5 and 6, Plaintiff alleges that Defendants breached their contract with her and that they violated the implied covenant of good faith and fair dealing. The elements for a breach of contract claim under Virgin Islands law are: "(1) the existence of a contract, including its essential terms; [2] the breach of a duty imposed by the contract; and (3) damages result[ing] from the breach." *Speaks v. Virgin Islands*, 2009 WL 167330, at *4 (D.V.I. Jan. 14, 2009) (citing *Pourzal v. Marriett Int'l, Inc.*, 2006 WL 2471834, at *2 (D.V.I. Aug. 21, 2006)). The

elements for a breach of the implied covenant of good faith and fair dealing are: "(1) that a contract existed between the parties, and (2) that, in the performance or enforcement of the contract, the opposing party engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties." *Speaks*, 2009 WL 167330, at *5 (citing *LPP Mortgage Ltd. v. Prosper*, 2008 WL 5272723, at *2 (D.V.I. Dec. 17, 2008)).  Here, Plaintiff has alleged that she had an employment contract with Defendants, and that, in September 2009, Defendants told her they would give her a new contract but did not do so.  Defendants argue that this means that the original contract was extinguished and that Plaintiff worked without a contract after that point; however, it is equally plausible that the first contract was not extinguished and that Plaintiff continued to work under those terms. Plaintiff then alleges several breaches of her employment contract, including failures to keep up Plaintiff's health insurance and failure to pay for work done in her final pay period. Accordingly, Plaintiff has alleged enough facts to support a claim for breach of contract, and so Defendants' motion will be denied as to Plaintiff's breach of contract claim.

While Plaintiff has properly alleged that there was a contract, and while it is acknowledged that this putative contract has an implied covenant of good faith and fair dealing, Plaintiff has not specifically stated how Defendants performed the contract in a way that was inconsistent with the reasonable expectations of the parties.  Accordingly, the Court will dismiss Plaintiff's claim for the breach of the covenant of good faith and fair dealing without prejudice and grant Plaintiff leave to file an amended complaint on this claim subject to the same conditions as the FLSA, COBRA, and FCA claims.

## VI. Intentional Infliction of Emotional Distress

In Count 7 Plaintiff alleges that Defendants intentionally inflicted emotional distress on Plaintiff. The elements of a claim of intentional infliction of emotional distress ("IIED") are: "(1) defendants acted intentionally or recklessly; (2) the conduct was 'extreme and outrageous;' (3) defendants' actions were the proximate cause of plaintiff's emotional distress; and (4) plaintiff suffered 'severe emotional distress.'" *Smith v. Elias*, 2007 WL 4209701, at *4 (V.I. Super. Ct. 2007) (citing *Lemke v. Int'l Total Servs., Inc.*, 56 F. Supp. 2d 472, 488 (D.N.J. 1999)). Defendants move to dismiss Plaintiff's IIED claim because Plaintiff's allegations concerning Defendants' conduct "do not rise to the level of outrageousness necessary to provide a basis for recovery." (Doc. No. 7, Defs.' Mot. Dismiss, at 9). However, at least one court in the Virgin Islands has held that employer retaliation can be presumed to be "extreme and outrageous." *Smith*, 2007 WL 4209701, at *6. Here, Plaintiff has alleged that Defendants retaliated against her by harassing her after they learned she was concerned about Defendants' potential Medicare violations, and that they harassed her to such an extent that she became physically ill. (Doc. No. 1, Compl. at ¶¶ 34–35). At this stage, these facts are sufficient to state a claim for IIED under Virgin Islands law, and Defendants' motion will denied as to this claim.

## VII. Fraud

Finally, in Count 8, Plaintiff states a claim for fraud. "In order to state a viable fraud claim, 'Rule 9(b) [of the Federal Rules of Civil Procedure] requires a plaintiff to plead (1) a specific false representation or omission of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damages.'" *Financial Trust Co., Inc. v. Citibank, N.A.*, 351 F. Supp. 2d 329, 330–31 (D.V.I. 2004) (quoting *In re*

*Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002)).  Plaintiff supports her fraud claim with allegations of three instances where Defendants allegedly made a promise to her that they did not intend to keep: (1) the promise of a new contract in September 2009; (2) the promise of compensation time instead of overtime payments; and (3) the promise of a COBRA letter.  A plaintiff cannot recover damages in tort that arise out of a contractual obligation; the remedy for a breach of a contractual obligation is a breach of contract claim.  *See Jo-Ann's Launder Center v. Chase Manhattan Bank, N.A.*, 854 F. Supp. 387, 390–92 (D.V.I. 1994) ("In the absence of any independent duty owed by [the defendant], plaintiffs' tort remedies may not be maintained in addition to those established under the contract itself.") (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, §92, at 655–57 (5th ed. 1984)).  Each of the instances where Plaintiff alleges that Defendant defrauded her is more properly recognized as a claim for breach of contract or a violation of attendant employment laws.  Plaintiff has not pled facts to establish that Defendants owed Plaintiff any duty outside of the duties established by Plaintiff's employment contract.  Additionally, Plaintiff has not alleged facts to establish how she was damaged by her reliance on Defendants' allegedly false representations.  Accordingly, Plaintiff's fraud claim will be dismissed.

## CONCLUSION

For the forgoing reasons, Defendants' Motion will be granted in part and denied in part.  An order consistent with this opinion will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.